J. and Z. CROOKER *vs.* HUTCHINSON and CUSHMAN.

If a party sustain loss by the negligence of his attorney in the collection of a debt, the latter is liable in damages, to be measured by the amount of the loss *actu-ally* sustained, and not by the *nominal* amount of the demand in collection. And any fact, which will tend to reduce the value of the debt, below the nominal amount, is proper to be considered by the Jury.

It is the duty of an attorney, who undertakes the collection of a debt, without special instructions, to pursue it through all the stages, as well against the Sheriff and bail, as against the principal, till the object is effected.

But he is justified in not prosecuting, unless specially directed, in cases where he is influenced by a prudent regard to the interest of the creditor.

THIS cause came before the Court on a motion for a new trial, and is founded upon exceptions, taken to certain opinions of the Court, expressed on the Jury trial, and which appear in the following case:

On the trial of said action, the plaintiffs proved the employment of the defendants as attorneys to commence and prosecute their action on book account against Meriam; and that no *scire facias* was brought against said Charles Willard, bail of said Meriam, within the year, as set forth in the declaration. That his real estate was under mortgage for more than its value. That the officer at the time of taking Willard as bail, knew of the mortgages, but did not know their amount. That he owed other debts to the amount of $1762, and was in possession of personal property to the amount of $584 62 only. That at the time of the service of the original writ and the acceptance of Willard as bail, all the personal property of said Willard was in custody of the law, and liable to be sold on execution; and that this fact was well known to the Sheriff's officer who served said writ; but the same proved sufficient to pay said debts, for which it was liable to be sold as aforesaid, and leave a yoke of oxen and horse, some other stock, and a set of farming tools. And the defendants proved, or, at least, adduced testimony calculated to prove, that said Meriam absconded from said Hartland in the spring of the year 1818. That he had no visible property then, nor for a considerable time before; and that, after being in business of merchandize about six months, in Albany, in the State of New-York, he failed in said business and has ever since remained there and in the city of New-York, and been very poor,

15

*Windsor,*
June
1824.

J. and Z.
Crooker
*vs.*
Hutchinson
and
Cushman.

That when said Willard was taken as bail, he was reputed to be in circumstances of responsibility, but in fact was not able to pay all his debts. That he carried on two farms, which yielded large profits the summer before, and the summer following his being so taken as bail as aforesaid ; but in the spring of 1819, he became wholly destitute of property, and swore out of gaol. That Josiah Crooker, one of the plaintiffs, lived about two miles from the office of the defendants, and was Constable of Pomfret during said period while he complains of the defendants' neglect, and was often in the village where the defendants lived, on business, and must probably have seen them often.    And there was no proof that the plaintiffs, or either of them, ever made any application to the defendants, or either of them, to commence a *scire facias* against said Willard as bail of said Meriam, or made any new retainer therefor, or that the defendants ever gave the plaintiffs notice of the situation of their case, and requested further instructions other than is herein stated. The plaintiffs also proved that said Willard was received as bail by the Sheriff, on the 17th of July, 1818; and that the Supreme Court, at the September term, 1820, adjudged against the Sheriff, on account of the insufficiency of said Willard, at said last time, when he was received as bail as aforesaid.

It was also in evidence, that after the service of a *scire facias*, which the defendants did cause to be served on the said Willard, on the 21st Dec. 1820, to wit, in February or March following, that the officer and Willard offered to pay to the plaintiffs $50 to be released from their liability to the plaintiffs, and said it would cost that sum to bring and deliver up said Meriam, and that the plaintiffs offered to take $100.   The plaintiffs went into the office and talked with said Cushman—the officer not present —and when he came in, said Cushman advised the plaintiffs not to settle with said Willard and the officer.

And said defendants did then and there contend before said Court, that they were not liable for the neglect complained of by the plaintiffs, without a new application from the plaintiffs to bring such *scire facias*. That one of the plaintiffs living so near the defendants, and so often seeing them, must have known about his prospects of collecting his debt by pursuing Willard, and must have known that no *scire facias* was brought against Willard ; and

that, from all the foregoing circumstances, and his not causing somebody to commence a *scire facias*, the Jury were well warranted in presuming that he had countermanded the retainer of the defendants, or had requested them not to commence a *scire facias* against said Willard.    That the chance of collection was too small to warrant a *scire facias* without express directions from the plaintiffs.    That the *scire facias* would probably have no effect, unless it was to compel the delivering up of Meriam, and making cost. That, therefore, the plaintiffs could not have wished such pursuit. And said defendants moved the said Court to direct a nonsuit in said action for want of proof of a new retainer, or new application from the plaintiffs to the defendants to bring *scire facias* against said Willard.    But said Court refused so to direct, and did decide that the original retainer bound the defendants to pursue said *scire facias.*    And said defendants then and there contended, That it was a proper question of fact for the Jury to determine, from all the foregoing circumstances, whether the plaintiffs did or did not know of, and consent to said delay complained of in said declaration, and control their said demand, and direct what suit or suits should be brought to enforce the collection.    But the said Court then and there decided that not to be a legal inference from the circumstances, and refused to leave the same to the Jury.

And said Court did then and there give in charge to said Jury, That the prospect of Meriam's being delivered up in discharge of his said bail, Willard, was too remote for the Jury to consider, either in reference to the claim against Willard upon the *scire facias*, or to the claim against the Sheriff, for taking said Willard as bail as aforesaid.    But that, if the Jury believed that the defendants, in the exercise of a sound and fair discretion, thought it not for the interest of the plaintiffs to commence a *scire facias*, a verdict should be returned for the defendants.

To all which decisions said defendants do except, &c.

*Marsh* and *Williams* for the plaintiffs.

The defendants, as attorneys of the plaintiffs, undertook the collection of a debt in favor of the plaintiffs against Richard Meriam, and issued a writ on book account, which was served January 6th, 1818, returnable to Windsor County Court, March

*Windsor,*
June,
1824.

J. and Z.
Crooker
*vs.*
Hutchinson
and
Cushman.

J. and Z.
Crooker
*vs.*
Hutchinson
and
Cushman.

term, 1818. Service was made by attaching the body of Meriam, and Charles Willard was taken as bail.

Auditors having been appointed, and having reported, judgment was rendered and execution issued in favor of J. and Z. Crooker against Meriam for $193 70 damages, and $24 47 cost, and 25 ct. for execution, September term, 1819.

Execution having been given to an officer, was returned *non est* December 1, 1819.

Meriam, the original debtor, went into the State of New-York soon after the service of the original writ.

Willard, the bail, at the time of the service of the writ, was insolvent, as stated in the case.

The plaintiffs insist that it was the proper duty of the defendants, as attorneys, to have taken out and prosecuted, within one year from the time of the judgment against Meriam, a writ of *scire facias* against Willard. That this duty they omitted; and that in consequence of this omission, the plaintiffs have lost the opportunity of enforcing the collection of their debt against the officer.

That it was the duty of the defendants, as attorneys, having undertaken the collection of the plaintiffs' debt, to have sued out the *scire facias* in proper season to charge the bail. The plaintiffs rely upon the general understanding and custom of attorneys and clients. That an attorney having undertaken the collection of a debt, and commenced a suit, without farther instructions, does sue out all process necessary to effect this object, unless he be directed to desist, or unless he decline farther attention to his client's business, and give notice accordingly. That such is the general course of business in this State. That the attorney without fresh instructions, and as circumstances occur, pursues the officer or neglect—the receiptor of property attached—the gaol-bond—*scire facias* against bail—enters an appeal; or if his client be appellee, files his complaint for affirmation of judgment. That pursuit by the attorney is his duty in such cases, is also contended on the authority of Dearborn *v.* Dearborn—15 Mass. 316.

The cases cited from the English authorities, in the defence, that a *scire facias* is a new suit, and requires a new warrant of attorney, do not apply to the practice in this country—the mode of appointing attorneys being different from that in Great Britian and N. York.

The plaintiffs contend that this case furnishes strong grounds for recovery ;—from the situation of Meriam, the circumstances under which bail was taken, as in the event of Merriam's not being delivered up on the *scire facias*, the officer would have been liable, and such seems to have been the opinion of one of the defendants in advising J. Crooker not to settle with the officer, as the whole debt could probably be recovered.

*Windsor,*
*June,*
1824.

J. and ¹Z.
Crooker
*vs.*
Hutchinson
and
Cushman.

The defendants except to the charge that the prospect of Meriam's being delivered up in discharge of his bail, was too remote for the Jury to consider, &c.   Meriam was in New-York or Albany.   If the *scire facias* had, in the usual course of business, been commenced at March term, 1820, (which was previous to the decision in Reed's case) the officer would have felt no interest in bringing back Meriam, as he did not *then* suppose himself liable ; and Willard, who was insolvent, would *never* take any trouble to bring up the principal.  But the chances were *hazardous*. It was a dangerous experiment to go into the State of New-York on such an expedition.   The contingency of bringing back Meriam was then, truly, too remote to be taken into account.

The defendants insist, that as J. Crooker lived within two or three miles of them, and often saw them, the Jury were to presume he knew of the *facts*, and gave instructions not to pursue. The situation of the case—of the principal—bail, and their circumstances, forbid any such inference :  Pursuit was particularly necessary.   Such an inference does not agree with the understanding of the defendants, while the *scire facias* was pending, and with the advice given to J. Crooker, one of the plaintiffs, not to settle with the officer.   The inference, too, is wholly unwarranted, when we consider the steps pursued, as it would seem, for the express purpose of charging the bail.   The suit against Meriam was pursued to final judgment, and the execution given out, as if for the mere purpose of laying the foundation of a *scire facias*, as it was well known that Meriam had absconded and was insolvent—that in this stage the plaintiffs should have directed the defendants to desist is therefore incredible.

*Hutchinson* and *Cushman, pro sese,* contended that the decision of the Court, upon the subject of a new retainer, was incorrect. That the first retainer extended only to the giving out execution

Windsor, June, 1824.

J. and Z. Crooker vs. Hutchinson and Cushman.

upon final judgment in the first suit—especially as one of the plaintiffs so resided that he must have been conusant of his whole concerns. 8 John. R. 361, 367, Jackson v. Bartlett. 2 Bos. and Pull. 357, Tipping v. Johnson. 6 John R. 106, Gonigal v. Smith. 1 Salk. R. 89. 2 do. 603. 5 Modern 397. 6 do. 304. 1 do. 402. 3 do. 369—and Lillie's Entries 225, 403, 890. 7 T. R. 337. Roll's Abr. Vol. 1, p. 291. 2 Sho. R. 138. 1 Rol. R. 2 Wash. 203, Stevens v. White. 4 Bur. 2060. That the circumstances shown of the reputed sufficiency of Willard, when he was received as bail—his total poverty at the time of judgment, and the proximity of one of the plaintiffs to the defendants, and the notorious poverty of Meriam—the certainty that he must have known whether a *scire facias* was, or was not, brought against Willard; and his total silence upon the subject, are all facts from which the Jury might infer that the plaintiffs were satisfied with the proceedings of the defendants, and consented to the very neglect they now complain of. And whether they *did* consent or *not*, is matter of fact, within the province of the Jury, and not at all a question of law for the Court. The trial proceeds as if the defendants knew all the facts in the original case, and the Crookers were wholly ignorant, whereas they, the defendants, must have received their knowledge from their clients, that is all particular knowledge of facts. The defendants, seeing the plaintiffs often at their office, must be presumed to have received their instructions from time to time.

The charge of the Court is incorrect, upon the subject of the probability of Meriam's being delivered up in discharge of his bail. *That* probability should have had its *full effect* in mitigation of damages, if nothing more. 2 Wills. R. 325, Russell v. Palmer. And it seems the plaintiffs viewed *that probability* something by their *offer*. 11 Mass. 188. 2 Mass. 526, Burrel v. Lightgow. 12 Mass. 127, Rice et al. v. Hawkins.

Skinner Ch. J. delivered the opinion of the Court.

The plaintiffs claim damages of the defendants for negligence in the discharge of their professional duty as attorneys. It appears from the case that the defendants were by the plaintiffs employed as attorneys to collect a demand against Meriam. A suit was commenced, and service made by attaching the body of Meriam—Wil-

Windsor,
June,
1824.

J. and Z.
Crooker
vs.
Hutchinson
and
Cushman.

lard became bail for his appearance—judgment was rendered September term, 1819—execution seasonably issued, and returned *non est inventus* ; and that the defendants neglected to issue a *scire facias* against the bill within the year. Evidence was given tending to shew that Meriam absconded from this State to the State of New-York, soon after the service of the writ, having no visible property—has ever since resided at Albany and New-York, poor and destitute. If a party sustains loss by the negligence of his attorney, there can be no doubt the latter is liable in damages, which are to be measured by the amount of the loss sustained, and not by the amount of the claim or demand in collection. If the attorney should neglect to cause the execution to be issued within the thirty days, and thereby property attached should be released or bail discharged, if the debt is not thereby lost, the debtor remaining of sufficient ability to pay, the attorney is not liable for the whole amount. And in analogy to the decisions that have been uniformly made in this State, in the case of Sheriffs, in which the *insolvency* as well as *solvency* of debtors has been considered proper for the Jury to consider in assessing the damages, it would seem the attorney ought not to be subject to the amount of the debt, provided he can shew that the debtor was without property, and to have charged him in execution would have been unavailing. The attorney is only liable for the amount of the loss occasioned by his neglect ; and any fact which will tend to reduce the value of the debt below the nominal amount, is proper to be considered by the Jury.

The defendants insisted on the trial that having shewn Meriam's insolvency—the probability of his being delivered up upon the *scire facias*, (he then residing in Albany, and accessible to his bail,) was proper for the Jury to consider in assessing the damages; but the Court decided otherwise, and instructed the Jury that the prospect of the principal's being delivered up in discharge of his bail, was too remote, &c. To this opinion, the defendants except; and upon this point we consider the Court erred, and the verdict must be set aside. Upon inquiry, it is found, that the cases are rare in which the principal, thus circumstanced, is not surrendered. Indeed, it appears that the plaintiffs themselves estimated the value of their debt at something like one half its nominal amount, in their offer to accept $100.

*Windsor,*
June,
1824.

J. and Z.
Crooker
*vs.*
Hutchinson
and
Cushman.

The doctrine in the cases of Russel *v.* Palmer, in Wilson, and Pitt *v.* Yalden, in Burrow, are opposed to the opinion expressed in this case upon the trial. The *quantum* of damages ought to have been left to the Jury; but from the instruction given by the Court, they considered it their duty, if they returned a verdict for the plaintiffs, to assess the damages to the full amount of the debt. Upon the other point, the Court have no hesitation in saying, that from the established usage and custom in this State, it is the duty of an attorney who undertakes the collection of a debt, (without special instructions) to pursue it through all the stages, as well against the Sheriff and bail, as against the principal, till the object is effected; and that he is justified in not prosecuting (unless expressly directed) in cases where he is influenced by a prudent regard for the interest of the creditor.

New trial granted.